# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **No. 17-201** |
| **CURTIS JOHNSON, JR.** | **SECTION I** |

## ORDER & REASONS

Before the Court is defendant Curtis Johnson, Jr.'s ("Johnson") motion[1] to strike (1) the superseding indictment's notice of special findings and (2) the government's notice of intent to seek the death penalty.[2] Alternatively, Johnson requests that the Court order (1) that the grand jury transcripts be disclosed to the defense or reviewed by the Court *in camera* and (2) that the government be required to amend its notice of intent to explain the notice's factual bases, respectively. For the following reasons, the motion is denied.

## BACKGROUND

This case arises out of an armored truck robbery and the murder of Hector Trochez, which occurred on December 18, 2013.[3] On November 9, 2017, a grand jury returned a four-count superseding indictment against defendants Lilbear George, Jeremy Esteves, Chukwudi Ofomata, Robert Brumfield, III, Jasmine Theophile, and

---

[1] R. Doc. No. 165.

[2] In his motion, Johnson incorrectly refers to the superseding indictment as the "second superseding indictment." *See generally* R. Doc. No. 165.

[3] R. Doc. No. 171, at 2; *see also* R. Doc. No. 23, at 3.

Johnson.[4] Count one charges the defendants with conspiring to obstruct, delay, and affect commerce by robbery.[5] Count two charges the defendants with aiding and abetting one another to obstruct, delay, and affect commerce by robbery.[6] Count four charges Jasmine Theophile and Lilbear George with aiding and abetting one another to attempt to and corruptly alter, destroy, mutilate, and conceal a cellular telephone and the information thereon with intent to impair a federal grand jury proceeding.[7]

Count three alleges that the defendants, "aiding and abetting each other, did knowingly use, carry, brandish, and discharge firearms during and in relation to crimes of violence . . . , as set forth in Counts 1 and 2 . . . , and in the course thereof caused the death of Hector Trochez through the use of firearms," the killing being defined as murder, as it was committed in perpetration of a robbery affecting commerce.[8]

The superseding indictment includes a notice of special findings as to count three. With respect to Johnson, the special findings are as follows:

    a. He was 18 years of age or older at the time of the offense;

    b. He intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Hector Trochez died as a direct result of the act;

---

[4] R. Doc. No. 23. Because Jasmine Theophile is only charged in count four of the superseding indictment, which is not at issue in this order, the Court's reference herein to "the defendants" is to defendants Lilbear George, Jeremy Esteves, Chukwudi Ofomata, Robert Brumfield, III, and Johnson.

[5] *Id.* at 2.

[6] *Id.* at 2–3.

[7] *Id.* at 3–4.

[8] *Id.* at 3.

c. He intentionally and specifically engaged in an act or acts of violence, knowing that the act or acts created a grave risk of death to a person, other than one of the participants in the offense, such that participation in such act or acts constitute a reckless disregard for human life, and Hector Trochez died as a direct result of the act;

d. In the commission of the offense, he knowingly created a grave risk of death to one or more persons in addition to the victim of the offense;

e. He committed the offense as consideration for the receipt and in expectation of the receipt of anything of pecuniary value; and

f. He committed the offense after substantial planning and premeditation.[9]

To render a criminal defendant eligible for the death penalty under the Federal Death Penalty Act (the "FDPA"), 18 U.S.C. §§ 3591–3598, the government must prove, beyond a reasonable doubt, one of four mental states, also known as statutory intent factors, provided in § 3591(a)(2) and at least one of sixteen statutory aggravating factors provided in § 3592(c). *United States v. Bourgeois*, 423 F.3d 501, 506–07 (5th Cir. 2005). The Court will refer to the § 3591(a)(2) statutory intent factors and § 3592(c) statutory aggravating factors collectively as "eligibility factors." The Fifth Circuit has held that eligibility factors must be charged by indictment.[10] *Id.* at 507. In this case, they are incorporated into the superseding indictment's notice of special findings as to count three.

---

[9] *Id.* at 8–9.
[10] The FDPA's list of aggravating factors is non-exhaustive, but nonstatutory aggravating factors do not make a defendant eligible for the death penalty. *Bourgeois*, 423 F.3d at 507. "Accordingly, it [is] neither constitutional nor statutory error for the non-statutory aggravating factors to be omitted from the indictment." *Id.* at 507–08.

When the government seeks the death penalty, at "a reasonable time before the trial" it must sign and file with the Court, and serve on the defendant, a notice that states that the government believes the circumstances of the offense justify imposition of the death penalty and that it will seek a sentence of death. 18 U.S.C. § 3593(a). The government must also set forth the aggravating factor(s) that it intends to prove at the sentencing hearing to justify such a sentence if the defendant is convicted. *Id.*

On August 31, 2018, the government filed its notice of intent to seek the death penalty as to Johnson. The notice of intent states that the government "believes the circumstances of the offenses charged in Count 3 of the Superseding Indictment are such that in the event of a conviction, a sentence of death is justified . . . , and that [the government] will seek the sentence of death for this offense."[11] The notice of intent also provides that, if Johnson is convicted, the government intends to prove the following statutory intent factors to justify a sentence of death:

1. He intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act; and

2. He intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act;[12]

---

[11] R. Doc. No. 148, at 1.
[12] *Id.* at 1–2.

These statutory intent factors are virtually identical to special findings II.b and c, relative to Johnson, in the superseding indictment.

Additionally, the notice of intent provides that the government intends to prove the following statutory aggravating factors:

1. Johnson, in the commission of the offense, knowingly created a grave risk of death to one or more persons in addition to the victim of the offense; and

2. He committed the offense as consideration for the receipt, or in the expectation of the receipt, of anything of pecuniary value.[13]

These factors are identical to special findings II.d and e, relative to Johnson, in the superseding indictment.

Finally, the notice of intent includes the following nonstatutory aggravating factors:

1. As reflected by the victim's personal characteristics as a human being and the impact of the offenses on the victim and the victim's family, [Johnson] caused loss, injury, and harm to the victim and the victim's family . . . , including, but not limited to, the fact that the victim's family suffered severe and irreparable harm; and

2. Johnson substantially planned and premeditated the offenses alleged in Count 3 of the Superseding Indictment, which required the use of a firearm to facilitate the robbery of armed security guards.[14]

The nonstatutory aggravating factors represent the sole difference between the superseding indictment's notice of special findings and the notice of intent to seek the death penalty.

---

[13] *Id.* at 2.
[14] *Id.* at 2–3.

In its opposition to the present motion, the government states that the notice of special findings consists of "two threshold mental intent factors" and "three statutory aggravating factors."[15] Although the government also suggests that the notice of intent includes the same statutory aggravating factors as the superseding indictment,[16] that is incorrect.

The notice of intent includes only *two* statutory aggravating factors: grave risk of death to additional persons and pecuniary gain.[17] The statutory aggravating factor regarding substantial planning and premeditation, as described in the FDPA, states, "The defendant committed the offense after substantial planning and premeditation to cause the death of a person or commit an act of terrorism." 18 U.S.C. § 3592(c)(9). However, as part of the government's case advocating for a death sentence, it intends to prove, not that Johnson substantially planned and premeditated a murder or an act of terrorism, but rather that he substantially planned and premeditated the armed robbery alleged in count three of the superseding indictment.[18] Hence, the factor "other criminal conduct – substantial planning and premeditation for armed robbery" is listed as a *non*statutory aggravating factor in the notice of intent.[19]

---

[15] R. Doc. No. 171, at 2.
[16] *Id.* ("In addition to the age, intent factors, and statutory aggravating factors set forth in the Notice of Special Findings of the Superseding Indictment, the government also noticed . . . the non-statutory aggravating factors of victim impact and other criminal conduct – substantial planning and premeditation for armed robbery . . . .").
[17] R. Doc. No. 148, at 2.
[18] *Id.* at 3.
[19] *Id.* at 2–3.

Johnson now moves to strike the superseding indictment's notice of special findings and the government's notice of intent. Generally, Johnson argues that both documents include mere "boilerplate conclusions" and that the government has "fail[ed] to make any factual allegations . . . that apply the alleged . . . factors to [him]."[20] The Court will first address the sufficiency of the superseding indictment.

## THE SUPERSEDING INDICTMENT

The Fifth Amendment's Indictment Clause provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. amend. V. The grand jury "controls not only the initial decision to indict, but also significant decisions . . . , including the important decision to charge a capital crime." *Campbell v. Louisiana*, 523 U.S. 392, 399 (1998).

"[T]he two primary functions of an indictment are that it (1) provides notice of the crime for which the defendant has been charged, allowing him the opportunity to prepare a defense . . . ; and (2) interposes the public into the charging decision, such that a defendant is not subject to jeopardy for a crime alleged only by the prosecution." *United States v. Robinson*, 367 F.3d 278, 287 (5th Cir. 2004). The indictment also "ensure[s] that the grand jury finds probable cause that the defendant has committed each element of the offense, hence justifying a trial." *United States v. Cabrera-Teran*, 168 F.3d 141, 143 (5th Cir. 1999), *overruled on other grounds*, 535 U.S. 625 (2002).

---

[20] R. Doc. No. 165, at 1.

"Under Fifth Circuit jurisprudence, an indictment is sufficient if it [1] contains the elements of the offense charged and [2] fairly informs a defendant of the charge against him[,] and [3] enables him to plead acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Hagmann*, 950 F.2d 175, 182–83 (5th Cir. 1991) (quoting *United States v. Stanley*, 765 F.2d 1224, 1239 (5th Cir. 1985), *reh'g denied*, 772 F.2d 904 (5th Cir. 1985)).

"[T]he defendant is entitled to a plain concise statement of the essential facts constituting the offenses charged," but "the indictment need not provide him with the evidentiary details by which the government plans to establish his guilt." *United States v. Gordon*, 780 F.2d 1165, 1172 (5th Cir. 1986). "[I]t is generally sufficient that an indictment set forth the offense in the words of the statute itself as long as the statutory language unambiguously sets out all the elements necessary to constitute the offense" *Id.* at 1169.

Although "the language of the statute may be used in the general description of an offence, . . . it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." *Hamling v. United States*, 418 U.S. 87, 117–18 (1974) (quoting *United States v. Hess*, 124 U.S. 483, 487 (1888)). A court reviewing the validity of an indictment must be "governed by practical, not technical considerations." *United States v. Ramos*, 537 F.3d 439, 459 (5th Cir. 2008). "The test for validity is not whether the indictment could have been framed in a more

satisfactory manner, but whether it conforms to minimal constitutional standards." *Gordon*, 780 F.2d at 1169.

Johnson does not argue that count three of the superseding indictment is missing any elements of the offense (to which the special findings relate) or the eligibility factors charged in the notice of special findings. Nor does he argue that the elements of such offense are ambiguous. Rather, he contends that the special findings are too vague and generic, thereby precluding him from preparing a defense against them.[21] Additionally, he argues:

> [T]he indictment contains no indication that the grand jury was presented with anything other than the government's generic, boilerplate allegations about the aggravating factors. Nothing on the face of the indictment shows that the grand jury had facts supporting the aggravating factors, or even that it was aware it was being asked to determine if [ ] Johnson should be held to answer for a capital offense.[22]

Johnson alternatively requests that if the Court declines to strike the notice of special findings, it should order that the grand jury transcripts be disclosed to the defense or the Court should review them *in camera*.[23] In support of his motion, Johnson makes several arguments, which the Court will address in turn.

---

[21] *See* R. Doc. No. 165-1, at 4.

[22] *Id.* at 5.

[23] *Id.* at 2–3. Johnson asserts that the purpose of reviewing the grand jury transcripts would be "to determine whether the government presented facts supporting the charged aggravating factors and whether the grand jury deliberately charged [ ] Johnson with a capital offense." *Id.* at 3. Johnson further requests that, if a review of the transcripts reveals that the grand jury failed to make the appropriate findings, the Court should strike the capital allegations from the superseding indictment. *Id.*

Johnson first argues that the superseding indictment contains no factual allegations demonstrating how he qualifies for any of the eligibility factors set forth in the notice of special findings.[24] Count three alleges:

> On or about December 18, 2013, in the Eastern District of Louisiana, [the defendants], aiding and abetting each other, did knowingly use, carry, brandish, and discharge firearms during and in relation to crimes of violence for which they may be prosecuted in a court of the United States, that is, violations of Title 18, United States Code, Sections 195l(a) and 2, as set forth in Counts 1 and 2 of this Indictment, in violation of Title 18, United States Code, Sections 924(c)(l)(A) and 2, and in the course thereof caused the death of Hector Trochez through the use of firearms, and the killing is murder as defined in Title 18, United States Code, Section 1111, in that the murder was committed in perpetration of a robbery affecting commerce; all in violation of Title 18, United States Code, Sections 924(c), 924(j)(l), and 2.

The superseding indictment makes clear that the special findings relate to count three of the superseding indictment, which tracks the language of several statutes to articulate the elements of the charged offense.[25] Johnson does not contest the adequacy of the offense as it is described in count three.

With respect to the notice of special findings, they include the verbatim and unambiguous language of the pertinent eligibility factors as they are enumerated in the FDPA.[26] Johnson nevertheless argues that the lack of factual allegations in the notice of special findings make it impossible to conclude that the grand jury found probable cause to charge the eligibility factors. But the Court notes that the notice of

---

[24] *Id.* at 4.
[25] R. Doc. No. 23, at 3, 8.
[26] *Compare id.* at 8–9 *with* 18 U.S.C. §§ 3591(a)(2)(C) and (D), 3592(c)(5), (8), and (9).

special findings does, in fact, include factual allegations because it incorporates by reference the accusations included in each count of the superseding indictment.[27] Therefore, not only does the notice of special findings set forth the elements of the charged eligibility factors, but it also includes the facts that form the basis of the special findings: Johnson and his co-defendants took currency and property from the presence and custody of security guards at the Chase Bank located at 2331 S. Carrollton Avenue in New Orleans on or about December 18, 2013; they did so against the security guards' will, by means of actual and threatened force, violence, and fear of injury; and they caused the death of Hector Trochez through the use of firearms in perpetration of the robbery.[28]

Johnson takes particular issue with the fact that the superseding indictment purportedly does not include allegations that support "the essential factor" that he "contemplat[ed] that a life would be taken."[29] However, although Johnson may be dissatisfied by the lack of detail contained in the superseding indictment, the Constitution does not require that an indictment include anything more than the "essential facts"; here, the superseding indictment does just that. *Gordon*, 780 F.2d at 1172 ("[A] defendant's constitutional right to know the offense with which he is charged must be distinguished from a defendant's need to know the evidentiary details establishing the facts of such offense . . . .").

---

[27] R. Doc. No. 23, at 7.
[28] *Id.* at 2.
[29] R. Doc. No. 165-1, at 4, 6.

The superseding indictment, read as a whole, sets forth the elements of the crime alleged in count three and the eligibility factors, fairly informing Johnson of such charges so as to allow him to prepare a defense and providing him with a double jeopardy defense against future prosecutions arising out of the same conduct. *See Hagmann*, 950 F.2d at 182–83. The notice of special findings meets "minimal constitutional standards," *Gordon*, 780 F.2d at 1169.

## II.

Second, Johnson argues that the superseding indictment gives no indication that the grand jury knew it was charging him with the death penalty: "any reference to the death penalty is strikingly absent."[30] Johnson is correct. The superseding indictment contains no mention of the death penalty. In fact, it does not mention any of the possible sentences that a court could impose if Johnson is found guilty of the charged offenses.

The Fifth Amendment, however, does not require that the government include information about potential punishments in an indictment, and courts have consistently rejected Johnson's argument that the grand jury be aware of the penalty-related consequences of its findings. *See*, *e.g.*, *United States v. Sanders*, No. 10-351, 2014 WL 3122418, at *6 (W.D. La. July 3, 2014) (rejecting the defendant's argument "that the Fifth Amendment requires a grand jury to be aware its special findings could result in the imposition of the death penalty"); *United States v. Aquart*, No. 06-160, 2010 WL 4363414, at *1 (D. Conn. Oct. 26, 2010) (holding that the indictment

---

[30] R. Doc. No. 165-1, at 2.

was not deficient "even if the Grand Jury was not informed Defendants could face the death penalty"); *United States v. Troya*, No. 06-80171, 2008 WL 4327004, at *8 (S.D. Fla. Sept. 22, 2008) ("[T]he case law is clear that there is no constitutional requirement that the grand jury be informed of the potential punishment arising out of the Special Findings."); *United States v. Williams*, No. 06-79, 2007 WL 2916123, at *4 (D. Haw. Oct. 2, 2007) (reviewing the case law regarding what must be submitted to a grand jury in FDPA cases and concluding that "nothing in those cases suggests that the grand jury must also be informed that by returning the indictment the defendant may be subject to the death penalty"); *United States v. Haynes*, 269 F. Supp. 2d 970, 981 (W.D. Tenn. May 5, 2003) (rejecting the defendant's argument that the grand jury could not fulfill its role without knowing that its special findings might make him eligible for the death penalty).

As one court explained,

> The grand jury's role is not to decide whether probable cause supports the imposition of a particular sentence against a charged individual; rather, the grand jury check on prosecutorial power stems from its independent factual determination of the existence of probable cause for the essential elements of the charged offense. Moreover . . . "[g]rand juries do not make findings or recommendations concerning punishment or sentencing . . . . The role of the grand jury simply is to investigate possible crimes against the sovereign so that it can make a judgment whether a trial on specific charges is necessary."

*United States v. Diaz*, No. 05-167, 2007 WL 656831, at *6 (N.D. Cal. Feb. 28, 2007) (citing *United States v. Matthews*, 246 F. Supp. 2d 37, 146–47 (N.D.N.Y. Dec. 31, 2002)). All the Constitution requires at the indictment stage is that the grand jury find probable cause to charge the elements of the alleged offenses and, in a capital

case, the existence of the eligibility factors. *See Bourgeois*, 432 F.3d at 507 (noting that the Fifth Circuit "require[s] the government to charge the statutory factors of the FDPA in the indictment"). The superseding indictment's silence as to Johnson's potential capital punishment is not a basis for striking the notice of special findings.

### III.

Finally, Johnson argues that the superseding indictment is inadequate because the special findings are identical for all the defendants. However, he cites no authority to suggest that this is improper or that it can serve as a ground for striking special findings in an indictment. The sufficiency of the superseding indictment and the notice of special findings do not turn on the level of differentiation among the findings as to each defendant. Indeed, as the government notes, the eligibility factors all relate to the charged offenses and—considering that the defendants are charged as co-conspirators in the same underlying crimes—it is logical, perhaps even to be expected, that the defendants would all also be charged with the same or closely similar eligibility factors.

.    .    .

The Court concludes that the superseding indictment's notice of special findings provides Johnson with adequate notice. Consequently, the Court must address Johnson's alternative request that the defense be permitted to either review the grand jury transcripts or, at a minimum, have the Court review them. Johnson urges review of the grand jury proceedings because, he argues, there is no indication

that the government presented the grand jury with evidence in support of the eligibility factors set forth in the notice of special findings.[31]

"The proper functioning of the grand jury system depends upon the secrecy of the grand jury proceedings." *United States v. Miramontez*, 995 F.2d 56, 59 (5th Cir. 1993). "[T]he Federal Rules of Criminal Procedure prohibit[ ] the disclosure of grand jury transcripts except in very limited circumstances." *United States v. Brooks*, No. 94-10924, 1995 WL 153089, at *1 (5th Cir. 1995); *see also* Fed. R. Crim. P. 6(e)(3). "Grand jury proceedings enjoy [a] presumption of regularity, and this presumption 'may be dispelled only upon particularized proof of irregularities in the grand jury process.'" *United States v. Arshad*, 325 F. Supp. 3d 695, 702 (E.D. La. July 2, 2018) (Morgan, J.) (quoting *United States v. R. Enters., Inc.*, 498 U.S. 292, 301 (1991)); *see also Beverly v. United States*, 468 F.2d 732, 743 (5th Cir. 1972).

A defendant requesting the disclosure of grand jury transcripts bears the burden of demonstrating "that a particular need exists" for the transcripts that "outweighs the policy of secrecy." *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400 (1959). To meet this burden, the defendant must demonstrate (1) that the materials he seeks are necessary to avoid a possible injustice in another judicial proceeding; (2) that the need for disclosure is greater than the need for continued secrecy; and (3) that the request is structured to cover only the necessary materials. *Miramontez*, 995 F.2d at 59 (citing *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 221–22 (1979)).

---

[31] R. Doc. No. 165-1, at 2–3.

Johnson has not met his burden of demonstrating a particularized need for disclosure. He has provided no evidence suggesting that release of the transcripts is necessary to avoid an injustice. He has merely conjectured that the grand jury *may* not have been presented with factual allegations sufficient to find probable cause for the eligibility factors based on the "bare-bones" superseding indictment.[32]

As explained herein, the superseding indictment meets constitutional standards. If the Court were to require the release of any grand jury transcripts, despite the superseding indictment's constitutionality, any defendant dissatisfied with an indictment's alleged lack of specificity could require the disclosure of grand jury materials. A request for grand jury transcripts "must amount to more than a request for authorization to engage in a fishing expedition." *United States v. Wooten*, No. 03-40735, 2004 WL 605241, at *1 (5th Cir. 2004).

Moreover, the Supreme Court has held that "[a]n indictment 'fair upon its face,' and returned by a 'properly constituted grand jury,' . . . 'conclusively determines the existence of probable cause' to believe the defendant perpetrated the offense alleged." *Kaley v. United States*, 571 U.S. 320, 328 (2014) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 117 n.19 (1975)). "The grand jury gets to say—without any review, oversight, or second-guessing—whether probable cause exists to think that a person committed a crime." *Id.* Johnson does not directly argue that the grand jury lacked probable cause as to the essential elements of the charged offenses or the special findings. But his

---

[32] R. Doc. No. 165, at 1; R. Doc. No. 165-1, at 2. *See also United States v. Robinson*, 367 F.3d 278, 284, 287–89 (5th Cir. 2004).

request to review the transcripts so that he may possibly strike a portion of the indictment based on a lack of probable cause for the grand jury's findings is closely analogous. Having determined that the indictment is facially valid, the Court declines Johnson's request to release and, alternatively, for the Court to review the grand jury transcripts relative to the notice of special findings.

## THE NOTICE OF INTENT

The Court now turns to Johnson's request to strike the government's notice of intent to seek the death penalty. Johnson's arguments as to the notice of intent closely mirror his arguments as to the superseding indictment's notice of special findings. He asserts that the allegations in the notice of intent are "simply boilerplate conclusions" that violate his right to due process.[33] Without additional information indicating how he qualifies for the factors set forth in the notice of intent, Johnson argues that he cannot prepare a defense against them.[34] He requests that the Court strike the notice of intent or, alternatively, order the government to amend it and provide more specific allegations.[35]

Johnson does not dispute that the notice of intent meets the statutory notice requirements. The FDPA mandates that the government file a notice of its intent to seek the death penalty for each defendant. Section § 3593(a) provides:

> If, in a case involving an offense described in section 3591, the attorney for the government believes that the circumstances of the offense are such that a sentence of death is justified under this

---

[33] R. Doc. No. 165, at 1; R. Doc. No. 165-1, at 3.
[34] R. Doc. No. 165-1, at 3.
[35] *Id.* at 2–3.

chapter, the attorney shall, a reasonable time before the trial or before acceptance by the court of a plea of guilty, sign and file with the court, and serve on the defendant, a notice—

(1) stating that the government believes that the circumstances of the offense are such that, if the defendant is convicted, a sentence of death is justified under this chapter and that the government will seek the sentence of death; and

(2) setting forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death.

The FDPA does not, however, "require the government to produce the details of its sentencing phase evidence." *United States v. Llera Plaza*, 179 F. Supp. 2d 464, 472 (E.D. Pa. Dec. 21, 2001). In this case, the notice of intent as to Johnson states that the government believes the circumstances of the offenses charged in count three of the superseding indictment warrant a sentence of death. It then lists the intent and aggravating factors that it intends to prove at the sentencing hearing.[36] The notice of intent meets the FDPA's notice requirements.

The critical question is whether the notice of intent also meets the relevant constitutional requirements. Courts are conflicted as to what due process exactly entails in this context. In *United States v. Battle*, the Eleventh Circuit explained that "[t]he Government is not required to provide specific evidence in its notice of intent." 173 F.3d 1343, 1347 (11th Cir. 1999). Several years later, the Eleventh Circuit reaffirmed its conclusion in *Battle*:

[T]he Supreme Court held in *Gray v. Netherland*, 518 U.S. 152, 166–70 [(1996)], that, although there is a right to advance notice of the charges,

---

[36] *See generally* R. Doc. No. 148.

18

there is no extant constitutional right to advance notice of the evidence to prove such charges in a capital sentencing hearing. . . . The [Supreme] Court indicated that the import of the cases was strongly against the validity of any such right. . . . The government in this case satisfied its constitutional and statutory obligations by informing the defendant of what aggravating factors—both statutory and nonstatutory—it intended to prove at trial. The government was not obligated to outline what specific pieces of evidence it planned to use to support the aggravating factors.

*United States v. LeCroy*, 441 F.3d 914, 929–30 (11th Cir. 2006), *cert. denied*, 550 U.S. 905 (2007).

The Eighth Circuit has cited *Battle* with approval. *See United States v. Lee*, 274 F.3d 485, 495 (8th Cir. 2001) (citing *Battle* and concluding that, "[a]lthough Lee had a right to advance notice of the aggravating factors the government sought to prove at sentencing, Lee had no right to advance notice of the specific evidence the government would use to prove those factors."). Similarly, the Fourth Circuit has held that "[t]he FDPA and the Constitution require that the defendant receive adequate notice of the aggravating factor[s], . . . not notice of the specific evidence that will be used to support [them]." *United States v. Higgs*, 353 F.3d 281, 325 (4th Cir. 2003), *cert. denied*, 543 U.S. 1004 (2004).[37]

---

[37] Several district courts have declined defendants' similar requests for more specificity. *See, e.g., United States v. Smith*, No. 07-433, 2008 WL 3285911, at *6 (E.D. Va. Aug. 8, 2008); *United States v. Taylor*, 316 F. Supp. 2d 730, 741 (N.D. Ind. May 3, 2004); *United States v. Edelin*, 128 F. Supp. 2d 23, 41–42 (D.D.C. Jan. 23, 2001); *United States v. Nguyen*, 928 F. Supp. 1525, 1545–46 (D. Kan. May 9, 1996). Many of these courts have concluded that no specificity is constitutionally required. *See, e.g., Edelin*, 128 F. Supp. 2d at 42 (finding that, although the defendant had provided no "legal authority showing that the notice provided is constitutionally insufficient . . . , [t]here *is* authority . . . which indicates that the Constitution is not offended even where a capital defendant does not receive pretrial notice of the aggravating circumstances upon which the government will rely") (emphasis added).

Indeed, "[i]t has always been the [United States Supreme] Court's view that the notice component of due process refers to the charge rather than the evidentiary support for the charge." *United States v. Agur*, 427 U.S. 97, 112 n.20 (1976). Although *Agur* analyzed the constitutional contours of notice in the context of mandatory discovery disclosures, the principle applies here with equal force. The notice of intent provides Johnson with notice of those statutory intent and aggravating factors it intends to prove at the sentencing hearing in connection with its death penalty request. Johnson cites no case in which a court has stricken a notice of intent as constitutionally inadequate because it lacked specific factual allegations, and the Court declines to do so here.[38] Similarly, because the Court concludes that the notice of intent passes constitutional muster, it also declines to order the government to provide Johnson with the information he requests.[39]

---

[38] Johnson relies on an Eastern District of Pennsylvania case in which the district court instead ordered the government to submit an outline of the evidence it intended to use to support the existence of several aggravating factors listed in the notices of intent. *United States v. Llera Plaza*, 179 F. Supp. 2d 464, 474–75 (E.D. Pa. Dec. 21, 2001). Other courts have adopted similar approaches. *See, e.g., United States v. Lujan*, 530 F. Supp. 2d 1224, 1270 (D.N.M. Jan. 14, 2008); *United States v. Lecco*, No. 05-107, 2007 WL 486614, at *5 (S.D. W. Va. Feb. 9, 2007); *United States v. Diaz*, No. 05-167, 2007 WL 656831, at *6 (N.D. Cal. Feb. 28, 2007); *United States v. Wilson*, 493 F. Supp. 2d 364, 375–78 (E.D.N.Y. July 14, 2006); *United States v. Bin Laden*, 126 F. Supp. 2d 290, 304–05 (S.D.N.Y. Jan. 2, 2001); *United States v. Glover*, 43 F. Supp. 2d 1217, 1222–26 (D. Kan. Mar. 4, 1999); *United States v. Kaczynski*, No. 96-259, 1997 WL 34626785, at *18–20 (E.D. Cal. Nov. 7, 1997).

[39] Additionally, the Court notes that, in its opposition to the present motion, the government has offered Johnson information about one of the factors it intends to prove at the sentencing hearing. With respect to the victim impact factor, the government states that it anticipates "calling witnesses, such as the mother and sister of the victim. The type of victim impact evidence to be adduced will include brief testimony concerning the life of the victim, how the death of the victim has

## CONCLUSION

**IT IS ORDERED** that the motion to strike the superseding indictment's notice of special findings and the government's notice of intent to seek the death penalty is **DENIED.**

New Orleans, Louisiana, November 29, 2018.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

affected each of them and the family in its entirety, and may include photographs of the victim." R. Doc. No. 171, at 13.